**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4502-18T3

TIFFANY TIMMONS,

     Plaintiff-Appellant,

v.

THOMAS S. LEON,
ANNA KELLY, a/k/a
ANA BOLBOTOWSKI,
BARKER BUS COMPANY,
ROBERT CLEMENTS, III,
DAVID HANNA,
PAWEL ZAWADKA, and
GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
GEICO,

     Defendants,

and

JAMES PHILIP MULLALY,
PETROCK'S LIQUORS, INC.,
and NICK PETROCK,

     Defendants-Respondents.

_____

Argued November 12, 2020 – Decided January 11, 2021

Before Judges Fuentes, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0810-16.

Richard Del Vacchio argued the cause for appellant (Del Vacchio O'Hara, P.C., attorneys; Richard Del Vacchio, on the briefs).

Edward J. Piasecki argued the cause for respondent James Philip Mullaly (Piasecki & Whitelaw, LLC, attorneys; Edward J. Piasecki, on the brief).

William S. Bloom argued the cause for respondents Petrock's Liquors, Inc., and Nick Petrock (Methfessel & Werbel, attorneys; William S. Bloom, of counsel and on the brief; Natalie Donis, on the brief).

PER CURIAM

Plaintiff Tiffany Timmons appeals from an order entered by the Law Division dated June 7, 2019, and a corrected order dated July 11, 2019, dismissing her complaint with prejudice. She also appeals from two orders entered on March 29, 2019 granting summary judgment in favor of defendants James Philip Mullaly, Petrock's Liquors, Inc. (Petrock's) and Nick Petrock.[1] We affirm.

---

[1] All references to Petrock's in this opinion refer to the corporate entity except as otherwise noted.

A-4502-18T3

Viewed in the light most favorable to plaintiff, <u>Templo Fuente De Vida Corp. v. National Union Fire Insurance Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. On June 18, 2014, plaintiff and her former boyfriend, Thomas S. Leon, both under the age of twenty-one years old at the time, attended a house party hosted by defendant Robert Clements, III, who was also underage. Clements is the son of defendant Anna Kelly a/k/a Anna Bolbotowski. According to Clements, he, Paul Zuadka, and David Hanna lived at his mother's home. The house party took place at her home in Hillsborough, and was predominantly attended by underage individuals. Kelly relocated to Florida prior to June 2014, and her home was used "near daily" for drug and alcohol use by young adults "mostly [eighteen] [to] [twenty-one] years of age."

Plaintiff and Leon arrived at the "impromptu" party at approximately 9:00 p.m., and up to that time, both were ostensibly sober and had not consumed any drugs or alcoholic beverages, according to plaintiff's deposition testimony. However, in her August 5, 2014 recorded sworn statement to police given less than two months following the accident, plaintiff stated she was drinking "beer" and "shots of tequila." Leon testified that he did not bring any alcohol to the party.

Approximately twenty to twenty-five young adults attended the party. At the party, plaintiff observed Leon consume approximately eleven "Miller High Life" beverages and Jack Daniels whiskey. Plaintiff testified the attendees at the party were "heavily drinking" and that there were about six cases or 100-120 beige cans of Miller High Life beer in the kitchen when she arrived, which were all gone when she left. In addition, plaintiff testified that the cases of beer were purchased from defendant Petrock's.

It was common knowledge to plaintiff and her friends that they could purchase cases of beer from Petrock's and were able to do this "all the time." On the night of the party, according to plaintiff and Clements, defendant Mullaly "bragged" he was able to buy the five to six cases of Miller beer from Petrock's that were at the party. Mullaly claimed he simply walked into Petrock's, purchased the beer, and it was "really cool."

Leon left the party "highly" intoxicated to drive plaintiff home.[2] Plaintiff was aware that Leon was "heavily intoxicated" and "definitely intoxicated" while she was allegedly sober. Notwithstanding knowledge of his heavy

---

[2] According to the toxicology report, Leon's blood alcohol content was 0.081%. His blood was drawn at 2:15 a.m. according to the police report. The accident occurred about three hours earlier at 11:10 p.m. The legal limit for driving while intoxicated is 0.08% as codified in N.J.S.A. 39:4-50.

A-4502-18T3

intoxication, plaintiff voluntarily entered Leon's vehicle with him behind the wheel. No one tried to prevent Leon from driving plaintiff home despite his intoxicated condition. Not far from where the party was held, Leon veered off the road and struck the rear of a parked bus, severely injuring plaintiff, who was seated in the front passenger seat. The accident took place in Hillsborough.

In her August 5, 2014 statement to police, plaintiff stated she drank four shots of tequila and beer during the day with her cousin at Clements's house. She "believed" that Hanna, who was of the age of majority and resided at the home where the party occurred, purchased the alcohol consumed at the party. Plaintiff also revealed Hanna purchased and gave her a bottle of Jose Cuervo Gold tequila earlier in the evening prior to her arriving at the party, and she and Leon had "at least twenty shots" that evening. Plaintiff also told police that Leon consumed six beers at the party in addition to tequila.

Plaintiff testified at her deposition she did not alert the police to the fact that Mullaly purchased the alcohol because they were all friends, and she did not want to get him into trouble. She also testified that her group of friends would drink and drive and "nobody there ever really cared" about preventing someone who was intoxicated from driving. The police performed an

investigation at the accident scene and determined that the alcohol at the party was purchased at Petrock's by the underage partygoers.

Lieutenant Michael Schutta testified that Clements told him all the alcohol was purchased at Petrock's. Christopher Griffo, who also attended the party, told police the partygoers played "beer pong" all evening—filling red "Solo" cups with Miller Lite from beige cans. Plaintiff also testified there were Heineken bottles, vodka, tequila, and Jack Daniels whiskey at the party. In her deposition testimony, plaintiff stated Mullaly "probably" purchased the Miller beer cases that night.

Clements gave a statement to Schutta on June 19, 2014, confirming that the partygoers were underage, the beer was purchased by Mullaly at Petrock's, and he did not show identification verifying his age. In his statement, Clements described Leon as "plastered" and that he had an open case of beer in the trunk of his car, believed to be "Bud Light." Police photographed filled bags and bins of empty containers from the party, including "Miller High Life" and "Miller Lite" cans and cardboard boxes scattered all over the property. Plaintiff testified she did not see any of the Miller Lite cans in the photographs of the garbage outside but later said the cans were not "Miller Lite" but "Miller High Life." She also represented she had "no idea" what happened to the cans of Miller High

6

Life consumed at the party and that she observed Leon drink Miller High Life beer.

Leon testified he did not know who purchased the beer for the party. His preference was Miller Lite cans. When Leon picked plaintiff up that night, he suspected she was under the influence of heroin. Leon denied drinking alcohol prior to 9:00 p.m. and testified that he and plaintiff were at the party for "two hours." He also testified that Mullaly is his best friend, and they speak on a daily basis. Mullaly testified that he spoke to Clements following the accident to "cover themselves" about "getting their stories straight" about who purchased the alcohol for the party. Petrock's provided video surveillance of its store for the night in question, but the footage did not include any camera angles depicting the register area where the alleged transaction occurred. The videotape was lost or destroyed, and therefore, there was no evidence of who purchased the alcohol from Petrock's.

After the completion of discovery, the Petrock defendants and Mullaly filed motions for summary judgment. Mullaly argued he was not a social host and owed no duty of care to plaintiff. He further asserted that even assuming he purchased alcohol for the party, he was not negligent and was not a proximate cause of plaintiff's accident. Mullaly further argued that plaintiff's "knowing

and voluntary" decision to get into the car with Leon in his intoxicated state was the proximate cause of her injuries. Petrock's contended no reasonable juror could conclude Mullaly purchased the alcohol at its store or that Leon's consumption of the beer allegedly purchased at Petrock's was a proximate cause of plaintiff's accident and resulting injuries.

On March 29, 2019, the Law Division judge heard oral argument on the motions and issued a written opinion. The judge found there were no genuine issues of material fact and that Mullaly and Petrock's were entitled to summary judgment. The judge decided the evidence did not support a finding that Mullaly purchased the beer at Petrock's because it was based on Clements's "rank hearsay" statements, which are inadmissible under Rule 803(b). The judge also ruled Mullaly owed no duty of care to plaintiff because he was not a social host and was not otherwise negligent. Further, the judge noted there was evidence in the record that established Leon was "visibly intoxicated" when he left the party with plaintiff. According to her deposition testimony taken approximately three years after the accident, the judge highlighted that plaintiff "was not consuming alcohol at the party," and was therefore, in control of her faculties.

In his opinion, the judge held: "[t]he key determination in deciding whether a social guest owes another social guest a duty turns on whether the

imposition of such a duty satisfied an abiding sense of fairness," citing <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 436 (1993). "A social guest owes no special duty of care to another social guest based merely on their co-equal status." The judge concluded that Mullaly did not own or rent the premises where the party was held, and there was no evidence that he hosted the party. In addition, the judge determined "plaintiff's entry into the Leon vehicle while she was sober and Leon was heavily and visibly intoxicated" was the proximate cause of the accident, not in any way attributable to Mullaly.

As to Petrock's motion for summary judgment, the judge noted the Licensed Services Liability Act, N.J.S.A. 2A:22A-1 to -7, is not a strict liability statute. Quoting <u>Steele v. Kerrigan</u>, 148 N.J. 1, 27-29 (1997), the judge found: "The jury must determine that the resulting injury was a foreseeable consequence of and proximately caused by the server's negligence." <u>Id.</u> at 34; <u>see also</u> N.J.S.A. 22A-5(a)(2) and (3). The judge stated "the nearly complete lack of corroboration of plaintiff's self-serving statement at deposition" about Mullaly advising her that he purchased a "large quantity of beer at Petrock's" for the party was contradicted by Clements's statement that Mullaly brought a twelve-pack of bottled beer to the party. Mullaly's statement to Clements was not "competent evidence" and constitutes hearsay under Rule 803(b). The judge

concluded no insufficient evidence was presented by plaintiff to find any negligence on the part of Petrock's was a "substantial factor in bringing about [her] injury" or that "some harm" was "foreseeable."

In addition, the judge found plaintiff's action of entering the vehicle with Leon was an intervening cause that broke "any possible chain of causation implicating Mullaly and/or Petrock's as a proximate cause of [p]laintiff's injuries." The judge therefore concluded that plaintiff had not presented sufficient evidence to support her claims under The Social Host Liability Act, N.J.S.A. 2A:15-5.5 to -5.8, The New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A-1 to -7, general negligence, and the other causes of action pled in her complaint and amended complaint. On March 29, 2019, the judge entered an order granting Mullaly's and the Petrock defendants' motions for summary judgment.

Thereafter, plaintiff filed a motion for leave to appeal, which we denied on May 23, 2019. The matter then settled with Leon for his $300,000 policy limit, and an order of dismissal as to Leon was filed on June 7, 2019. A corrected order dismissing the complaint with prejudice was entered on July 11, 2019. This appeal followed.

II.

On appeal, plaintiff argues the judge erred as a matter of law by granting Mullaly's and the Petrock defendant's motions. Plaintiff contends she presented sufficient evidence to raise genuine issues of material fact as to whether: (1) Mullaly was a social host and failed to apply a general negligence standard; (2) Mullaly owed a duty to plaintiff; and (3) plaintiff's entry into Leon's vehicle was the intervening factor and sole proximate cause of her injuries. Plaintiff also asserts the judge usurped the jury's role by making findings of fact and credibility determinations.

When reviewing an order granting summary judgment, we apply the same standard that the trial court applies when ruling on a summary judgment motion. Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). The court rules provide that summary judgment shall be granted when the record before the court on the motion "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The court rules further provide that "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the

A-4502-18T3

parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). It remains "the unqualified affirmative burden of [the non-moving] part[y] to make a complete and comprehensive showing why summary judgment should not be entered[.]" Lombardi v. Masso, 207 N.J. 517, 556 (2011) (Rivera-Soto, J., dissenting).

"The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case was tried." Globe Motor Co, 225 N.J. at 480. "Thus, 'neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action.'" Id. at 480-81 (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). We consider, as the judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law."  Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill, 142 N.J. at 536).

A plaintiff has the burden of establishing proximate cause relating to defendants' conduct which led to the injuries.  "[T]he issue of proximate cause 'may be removed from the factfinder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established.'"  Townsend v. Pierre, 221 N.J. 36, 60 (2015) (quoting Fleuhr v. City of Cape May, 159 N.J. 532, 543 (1999)).

> [T]o prove the element of causation, plaintiffs bear the burden to 'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'
>
> [Id. at 60-61 (quoting Davidson v. Slater, 189 N.J. 166, 185 (2007)).]

"Thus, in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence, summary judgment may be granted dismissing the plaintiff's claim."  Id. at 60.

13

N.J.S.A. 2A:15-5.5 defines a social host as "a person who, by express or implied invitation, invites another person onto an unlicensed premises for purposes of hospitality . . . ." The Act provides an injured party:

[M]ay recover damages from a social host only if:

(1) The social host willfully and knowingly provided alcoholic beverages either:

(a) To a person who was visibly intoxicated in the social host's presence; or

(b) To a person who was visibly intoxicated under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another; and

(2) The social host provided alcoholic beverages to the visibly intoxicated person under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk; and

(3) The injury arose out of an accident caused by the negligent operation of a vehicle by the visibly intoxicated person who was provided alcoholic beverages by a social host.

[N.J.S.A. 2A:15-5.6(b)(1)-(3).]

Here, plaintiff posits three allegations against the moving defendants: (1) that Mullaly purchased alcohol from Petrock's and subsequently distributed said alcohol to minors; (2) that Petrock's served alcohol to minors and was thus the

14

proximate cause of the subject accident; and (3) Petrock's was negligent in its distribution and sale of alcohol to minors. We are unpersuaded by plaintiff's arguments. The only evidence present in the record supporting plaintiff's contentions is her own self-serving testimony stated for the first time three years after the accident, that upon arriving at the party, Mullaly "bragged" he purchased "five to six [twenty]-pack cases" of "Miller High Life" from Petrock's and that Leon consumed "eleven beers from it."

Moreover, plaintiff gave a detailed recorded statement to the police on August 5, 2014, and stated that Dave Hanna purchased the liquor for the party on the same day of the accident. Plaintiff stated Hanna, who was of age, always purchased their alcohol and specifically bought the beer and bottles of tequila which Leon consumed at the party. In her statement, plaintiff made no mention of Mullaly or Petrock's being the situs of the purchased alcohol, and she represented that she drank Jose Cuervo tequila before going to the party.

Additionally, interrogatories were answered and certified to by plaintiff four months prior to her deposition. One supplemental interrogatory inquired as to whether the alcohol was purchased by an underage person at Petrock's. Plaintiff evaded answering the supplemental interrogatory and responded by generally referencing the prosecutor's file and surveillance video from Petrock's.

However, neither of these items supports her later revised version of events. Saliently, plaintiff's certified interrogatory and supplemental interrogatory answers made no mention of Mullaly or that he advised her that he had purchased the alcohol from Petrock's. When asked at her deposition why she failed to state in her discovery responses that Mullaly bragged to her he purchased alcohol from Petrock's, plaintiff responded that she did not think it was important to mention at the time.

The record shows of the eighty-eight photographs taken by the police the night of the accident, none of the photos depicted any of the 120 beige-colored "Miller High Life" cans, but the photographs did show various bottles of hard liquor, including tequila, consumed that night. One police photograph depicted an almost empty bottle of Jose Cuervo Gold tequila. Plaintiff asserted she had "no idea" what happened to the cans of beer. Mullaly and Leon denied the alcohol was purchased at Petrock's. And, Clements stated that Mullaly brought a "twelve-pack of bottled beer to the party," and "Leon did not consume any of it."

Moreover, Mullaly and Leon both also identified Hanna as the individual who purchased alcohol for the group of partygoers. At her deposition, plaintiff testified Hanna "always" obtained the alcohol for these underage drinking

16

parties, "except on that night," because he was of age. As stated previously, Petrock's video footage neither showed Mullaly nor any other underaged partygoer purchasing alcohol at the store on the night of the accident.

Based upon the contradictions and vast inconsistences in plaintiff's statements to police, her deposition testimony, answers to interrogatories, supplemental interrogatories, and discovery, and the absence of any supporting empirical evidence in the record, the judge concluded:

> Plaintiff's assertion, revealed for the first time more than three[]-years after the accident, that Mullaly brought five to six [twenty]-pack cases of beer to the party, and that he purchased them from Petrock's, and that Leon drank eleven beers from it, is self-serving. The only competent evidence of this assertion is her own testimony years after the fact. Her statement to the police two months after the accident and deposition testimony three[]-years later are wildly inconsistent, to the point that her competing versions of what happened are irreconcilable . . . .
>
> The overwhelming weight of the evidence shows that plaintiff's assertions about Mullaly, Petrock's, and the source of the beer are factually inaccurate and unsupportable. None of the many police photographs taken shortly after the accident, inside or outside the residence, show even one beige can of the many dozens of Miller-High Life cans she claims that Mullaly purchased from Petrock's and brought to the party. There is no video surveillance from Petrock's security cameras that show Mullaly purchasing the beer. Her assertions are not supported by any competent evidence in the motion record.

17

The judge was correct in his analysis. All of this evidence in the record "is so one-sided" that the court "should not hesitate to grant summary judgment," S.P. v. Newark Police Dept., 428 N.J. Super. 210, 220 (App. Div. 2012) (quoting Brill, 142 N.J. at 540), as there exists a "single, unavoidable resolution of the alleged disputed issue of fact." Brill, 142 N.J. at 540. Here, the only evidence in the record that the beer consumed by Leon was purchased by Mullaly from Petrock's is plaintiff's uncorroborated, unsubstantiated testimony. And, plaintiff's testimony is overshadowed by facts in the record. Therefore, no reasonable jury could find her version of the facts to be true and accurate. The judge properly granted summary judgment to Mullaly and Petrock's.

Plaintiff argues the judge erred in finding Mullaly was not a social host and in failing to apply a general negligence standard. In order to prove a cause of action in negligence, the plaintiff must establish three elements: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach. The issue of whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide. Carvalho v. Toll Bros. & Dev., 143 N.J. 565, 572 (1996).

Mullaly argues that plaintiff could not prove a prima facie case of negligence against him because she could not establish he owed her a duty or that his actions were the proximate cause of her injuries. Plaintiff acknowledged this in her brief. Mullaly also asserts that he had no control over the guest list for the party. However, plaintiff asserts the judge erred by failing to recognize that a prudent person in Mullaly's position would not have purchased six cases of beer and brought them to the Clements's home without foreseeing he was creating an unreasonable risk of someone becoming intoxicated, driving, and causing injuries. We are not persuaded by plaintiff's argument.

In his opinion, the judge considered the duty analysis framework established in Hopkins and the imposition of a duty abiding a sense of fairness. 132 N.J. at 436. Moreover, the judge applied general negligence principles when he analyzed whether the actions of Mullaly (and Petrock) were a proximate cause of plaintiff's injuries. Our careful review of the record shows Mullaly had no control over the party or who would drink alcohol. He did not invite plaintiff to the party. No relationship existed between Mullaly and any attendees at the party, and he had no ability to exercise care for guests that were not his. We are also convinced that the judge did not make an assessment of the parties' credibility in reaching his decision but considered what plaintiff stated and

19

provided in the context of the entire record—an appropriate exercise of the summary judgment standard.

Our Supreme Court recently held:

> An underage adult defendant may be held civilly liable to a third-party drunk driving victim if the defendant facilitated the use of alcohol <u>by making his home available as a venue for underage drinking</u>, regardless of whether he is a leaseholder to titleholder of the property; <u>if the guest causing the crash became visibly intoxicated in the defendant's home; and if it was reasonably foreseeable that the visibly intoxicated guest would leave the residence to operate a motor vehicle and cause injury to another.</u>

Estate of Narleski v. Gomes, 244 N.J. 199, 204 (2020) (emphasis added). Mullaly did not own the home where the party took place, did not leave the premises, and there is no evidence in the record to suggest he knew Leon left the party with plaintiff in an intoxicated state. We are thus unpersuaded by plaintiff's theory that a "prudent person in Mullaly's situation would not have brought five or six cases of beer to share with a party of people who were underage."

Even if Mullaly purchased the beer, it would not have created the attendant risk that a "party guest would drink to excess and then drive." Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 324 (2013). The judge was

correct in concluding that Mullaly owed no duty of care to plaintiff because he was not deemed a social host under our jurisprudence. As highlighted by the judge, plaintiff, Mullaly, and Leon were "equals in legal stature at the party," being around the same age. Plaintiff and Leon were romantically involved at the time. As the judge astutely pointed out, "if anyone was in a position to sense danger from Leon's alcohol consumption, it was plaintiff." There was no evidence in the record that Mullaly had a chance to prevent Leon from driving plaintiff home from the party. Therefore, there was no duty of care breached by Mullaly, and summary judgment was properly granted on his motion.

III.

Lastly, we reject plaintiff's argument that the judge erred in concluding that the sole proximate cause of her injuries was the intervening factor and superseding cause of her entering Leon's vehicle. The Restatement's definition of superseding cause provides:

> A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm.

21

[Restatement (Second) of Torts § 440 comment b (1965).; see also Lynch v. Scheininger, 162 N.J. 209, 226 (2000).]

The judge noted "even assuming plaintiff could establish that Mullaly was negligent in bringing beer to the party, and trace that negligence back to [defendants'] alleged negligent service of the alcohol . . . plaintiff cannot leap the proximate cause hurdle." The Lynch Court described the factors set forth in The Restatement of Torts "that influence the decision to treat an intervening event as a superseding cause."

> The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:
>
> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

[Lynch, 162 N.J. at 227-28 (quoting Restatement (Second) of Torts § 442 (1965)).]

Our Supreme Court cautions that a "pragmatic application of the doctrine of superseding cause" should apply and focus on the "specific facts and circumstances that raise the issue irrespective of whether the intervening event involved negligent or intentional conduct by others." Id. at 228 (citations omitted).

We addressed this issue in Dower v. Gamba. In that case, two plaintiffs filed suit after suffering injuries from a car accident in which the driver was intoxicated after leaving a party. 276 N.J. Super. 319, 322 (App. Div. 1994). In upholding the trial court's granting of summary judgment to the defendants who hosted the party, we stated "[w]hile serving alcohol to a minor may provide a

basis for establishing negligence, that negligence must nonetheless be a proximate cause of the injuries sustained." Id. at 328.

Our Supreme Court has held that "[a] superseding or intervening act is one that breaks the 'chain of causation' linking a defendant's wrongful act and an injury or harm caused by plaintiff." Komlodi v. Picciano, 217 N.J. 387, 418 (2014). The Court further cautioned that intervening causes that are "foreseeable" or the "normal incidents of the risk created" will not break the chain of causation and relieve a defendant of liability. Ibid.

Here, plaintiff testified to being "drug and alcohol free" on the day of the accident and prior to leaving the party. In contrast, she testified Leon was "visibly and heavily intoxicated." Nonetheless, plaintiff voluntarily entered defendant's car. We agree with the judge and conclude that plaintiff's decision to accept a ride home from Leon is a superseding cause and conduct that intervened subsequent to any actions by Mullaly and/or Petrock's to warrant termination of responsibility. Petrock's is even further removed from any liability, and summary judgment was providently granted.

Plaintiff's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4502-18T3